UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TAMECIA BROWN,<br><br>　　　　　　　Plaintiff,<br>v.<br>ALBERTSONS, LLC,<br><br>　　　　　　　Defendant. | Case No. 2:16-cv-01991-JAD-PAL<br><br>ORDER<br><br>(Mot for Sanctions – ECF No. 14) |

The undersigned conducted a hearing on February 14, 2017, on the Plaintiff's Motion for Sanctions due to Spoliation of Evidence (ECF No. 14). David Tanner appeared on behalf of plaintiff, and Justin Smerber appeared on behalf of defendant. The court has considered the motion, defendant's Response (ECF No. 15), plaintiff's Reply (ECF No. 16), and the arguments of counsel at the hearing.

## **BACKGROUND**

The Complaint was filed in state court and removed (ECF No. 1) on August 22, 2016. Plaintiff alleges that she was at an Albertson's store located at 5500 Boulder Highway, Las Vegas, Nevada, on February 1, 2016. Complaint ¶5. While walking down an aisle, she encountered an unknown and unforeseen liquid on the floor causing her to slip and fall. *Id.* ¶9. The fall caused severe and debilitating injuries. *Id.* The complaint alleges a single claim for negligence and seeks damages in excess of $10,000.

The Petition for Removal (ECF No. 1) indicates that on August 11, 2016, plaintiff served defendant Albertson's with a first supplemental disclosure to her early case conference list of witnesses and documents in which she alleges she sustained medical expenses of $57,734.11, and had future damages between $250,000 and $1,000,000. On September 19, 2016, the court approved the parties' stipulated proposed discovery plan and scheduling order which established

1

a February 18, 2017 discovery cutoff and other case management deadlines consistent with LR 26-1. The parties requested and received two extensions of the discovery plan and scheduling order deadlines. The current discovery cutoff is July 17, 2017.

In the current motion, plaintiff seeks an order sanctioning Albertson's for spoliation of evidence. Plaintiff argues that Albertson's either destroyed or failed to preserve relevant evidence in violation of its legal obligations. Albertson's store director conducted an investigation after the slip and fall which consisted of: (1) obtaining a statement from the injured party; (2) preparing an incident report; (3) taking pictures of the area; (4) getting surveillance videos; and (5) communicating with Sedgwick, its third-party claims adjuster. However, plaintiff argues that Albertson's destroyed virtually all evidence of its fault related to this accident.

Albertson's employees who arrived at the scene took only four photographs which show less than half of aisle 9 where the accident occurred, and none of the spill. Additionally, Albertson's did not preserve the surveillance video, and claims that the video is not available because its system was down. An incident report was prepared, but it was destroyed when it was copied over by a customer incident report in the copying process. Albertson's Rule 30(b)(6) deposition designee testified that the original report is gone and no copy exists. Finally, plaintiff claims that spoliation sanctions are appropriate because correspondence between Albertson's and its third-party administrator/claims adjuster was destroyed. The testimony of Albertson's Rule 30(b)(6) designee was that the prior store director at the time of this incident was terminated, and his emails were not preserved.

Plaintiff argues that Albertson's was on notice of a potential claim on the date of the slip-and-fall because Ms. Brown stated she was injured and was going to seek medical attention for her injuries. This placed Albertson's on notice of its duty to preserve. Albertson's intentionally failed to preserve vital evidence. Albertson's manager on duty at the time of the incident was deposed in this case and testified that Albertson's knew its action on the evening of the fall was dangerous and employees did not comply with its own safety policies. In essence, the manager admitted that Albertson's knew it was liable for this fall. Thus, Albertson's had every incentive to destroy evidence, "which is the only way it could possibly defend this action at trial." Plaintiff claims that

Albertson's went out of its way to preserve only evidence that would be possibly favorable to it, and that its failure to preserve the items specified in the motion will result in incomplete and spotty evidence at trial. Plaintiff therefore requests that the court sanction Albertson's by striking its "answer as to liability and its comparative negligence affirmative defense" and "issue any other appropriate sanctions."

Albertson's opposes the motion arguing that plaintiff's motion contradicts itself. On the one hand plaintiff alleges that defendant's manager admitted at deposition that Albertson's negligence caused plaintiff's fall. On the other hand, plaintiff contends that missing evidence makes it difficult for her to prove her case. Albertson's argues that if its employee admitted that it was negligent at the deposition, then the motion is "moot." Albertson's also argues that it disclosed the incident report, all pre-litigation, non-privileged correspondence between its adjuster and Albertson's, and made attempts to retrieve the surveillance video. The events of the investigation were memorialized in an incident report that plaintiff completed which was signed by the store manager on duty at the time, John Ryan Ramirez. Mr. Ramirez also filled out a hand-written statement within days of the incident. Additionally, Albertson's third-party claims adjuster, Sedgwick, memorialized all communications it had with Albertson's in its claim notes which were produced to the plaintiff in initial Rule 16.1 disclosures on July 10, 2016, prior to removal.

Albertson's also points out that photographs were taken of the floor which clearly depict the spill and the immediate area where the plaintiff fell. Plaintiff's counsel deposed defendant's Rule 30(b)(6) designee, Isaac Baca, and showed the witness the photographs requesting that he circle all areas in the photographs where Mr. Baca saw milk in the pictures. The pictures were attached as Exhibit 6 to the transcript. Mr. Ramirez also testified at length about the spill. He testified that the spill was milk that was tracked from the meat department through the back of the store down aisle 9 and went all the way up to the front registers. Mr. Ramirez testified that the spill was so large that other courtesy clerks were cleaning up the mess in other parts of the store. He also admitted that there were slip marks through the milk where the plaintiff fell and there were

no warning cones in the area. Additionally, Mr. Ramirez testified about Albertson's policies and procedures regarding cleaning spills.

Albertson's concedes it has been unable to locate the customer/vendor incident worksheet that was filled out in this case. A blank copy of the form is attached to Exhibit G to the opposition. Counsel for Albertson's argues that all of the information that would have been filled out in the worksheet has been disclosed in other discovery produced or in deposition testimony. With respect to the video surveillance tape, the claims adjuster's notes document the timeline regarding attempts to preserve the surveillance video. On February 2, 2016, at 7:30 a.m., the day after the incident, Sedgwick emailed the store director instructing the store to compile all incident-related information and documents and send it to Sedgwick within 14 days. Copies of the claim notes were produced in discovery and attached as Exhibit C to the opposition.

On February 10, 2016, the store informed Sedgwick that its video system was down, but that a specialist was coming to the store that day to fix it. On February 16, 2016, the store updated the adjuster on the situation indicating that the video was still down, but there was an outstanding service ticket for the repair. The store informed Sedgwick that the issue was widespread and affected more than one store.

On February 22, 2016, counsel for plaintiff sent a representation and preservation letter, a copy of which is attached as Exhibit D to the opposition. On March 7, 2016, the store director advised the adjuster that all surveillance video footage prior to March 1, 2016, was lost, but that another specialist was going to try to recover the lost video. The specialist was unable to recover lost surveillance videos prior to March 6, 2016, and the store director so advised Sedgwick on March 15, 2016.

Albertson's argues that plaintiff misstates the evidence that may be missing and speculates to the relevancy or importance of the evidence. Albertson's maintains the court should deny the motion for sanctions because plaintiff has failed to show it destroyed evidence after it was on notice of potential litigation. Albertson's was first put on notice of the potential of litigation on February 22, 2016, when counsel for plaintiff sent his letter of representation. Plaintiff has not established that Albertson's negligently or recklessly destroyed any evidence after February 22,

4

2016, and has therefore failed to meet her initial burden of showing that defendant destroyed evidence after the potential for litigation became probable.

Plaintiff also misrepresents what evidence is missing. Photographs were taken of the floor which clearly show the spill on the floor and the immediate area where plaintiff fell. Mr. Ramirez testified at his deposition to the breadth of the spill and that the spilled milk was "tracked all the way back from my Meat Department, through the back of the store, down aisle 9, and that it went all the way back up to the front to, like, the registers." Albertson's diligently and reasonably attempted to retrieve the surveillance video, but was unable to do so. It could not preserve a surveillance video that did not exist. The incident report was disclosed in initial disclosures and was not destroyed. The former store director's emails were not retained but correspondence between the adjuster and Albertson's is documented in the adjuster's claim notes that log and summarize every pre-litigation, non-privileged communication between Sedgwick and Albertson's.

Finally, Albertson's asserts it is simply not true that missing or incomplete evidence will lead to spotty and incomplete information at trial. All information in the customer/vendor incident call worksheet, surveillance video, photographs that were not taken, and correspondence that was destroyed can be found in the extensive information that has been disclosed in this matter. Plaintiff's motion provides no justification for requesting the drastic sanction of striking its answer or precluding a comparative negligence affirmative defense. Information that would have been on the customer/vendor incident call center worksheet has otherwise been disclosed in discovery. Albertson's cannot produce a surveillance video that never existed because of a system failure, and the plaintiff is simply wrong that Albertson's destroyed all pre-litigation correspondence between it and its claims adjuster. Defendant therefore requests that the court deny the motion in its entirety.

Plaintiff replies that Albertson's destroyed or failed to preserve evidence vital to this case which should result in significant sanctions. The incident report contained vital information that was intentionally destroyed and no long exists. It was copied over and the original destroyed which shows intent to destroy and thwart plaintiff's ability to conduct discovery in this case.

5

Although Albertson's opposition argues that litigation was not reasonably foreseeable until it received a letter from plaintiff's attorney 3 weeks after the fall, plaintiff argues that Albertson's was on sufficient notice of a potential claim on the date of the slip and fall because plaintiff indicated she was injured and intended to seek medical attention.

The court should impose sanctions that level the "evidentiary playing field" to put the prejudiced party in the same position she would have been if the evidence had not been destroyed. An adverse inference sanction is one such available sanction. The court may also impose evidentiary sanctions allowing evidence of spoliation, excluding evidence or witnesses, or deeming certain matters admitted. Plaintiff argues that litigation-ending sanctions are appropriate when a party has engaged in deliberate actions to deceive and undermine the judicial process. In this case, plaintiff is asking the court to sanction Albertson's by striking its answers as to liability, and by not allowing it to present evidence of comparative fault. Although some courts may characterize these as terminating sanctions, plaintiff argues they could also be characterized as an evidentiary sanction. The sanctions requested are not terminating sanctions because "it does not ask for litigation to end; rather, it is an evidentiary sanction that asks that certain defenses not be allowed and certain evidence not be presented."

Plaintiff is requesting sanctions based on the extensive and wide-ranging evidence that has been destroyed and not preserved, because Albertson's store director testified that Albertson's was at fault for this fall, and based on the wide-ranging evidence that has been destroyed or not preserved, "it is clear that Albertson's has gone out of its way to affect plaintiff's ability to present her case at trial." The court should therefore "strike Albertson's answer as to liability and not allow evidence of corporation's fault" or alternatively, impose an evidentiary sanction that Albertson's cannot present any evidence contradicting the store director's testimony that Albertson's is at fault for this fall. Plaintiff believes a more severe sanction is appropriate, but leaves the matter to the court's discretion.

/ / /

/ / /

/ / /

**DISCUSSION**

I.  **Applicable Legal Standards**

   A.  **Spoliation**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011).

The Supreme Court has recognized that document retention policies "are common in business" and they "are created in part to keep certain information from getting into the hands of others, including the Government." *Arthur Anderson, LLP v. United States*, 544 U.S. 696, 704 (2005). "It is, of course, not wrongful for a store director to instruct his employees to comply with a valid document retention policy under ordinary circumstances." *Id*. The Ninth Circuit has acknowledged that most document retention policies are adopted with benign business purposes understanding the fact that "litigation is an ever-present possibility in American life." *Micron Technology*, 645 F.3d at 1322. A party may appropriately limit the volume of files retaining only materials of continuing value without violating a legal duty. *Id.* "Thus, where a party has a long-standing policy of destruction of documents on a regular schedule, with the policy motivated by general business needs, which may include a general concern for the possibility of litigation, destruction that occurs in line with the policy is relatively unlikely to be seen as spoliation." *Id.*

The Ninth Circuit has also held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (citing *Kitsap Physicians Serv.*, 314 F.3d at 1001–02 (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation));

*State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) (same).

### B. Duty to Preserve

A party's duty to preserve evidence begins when litigation is "pending or reasonably foreseeable." *Micron Technology*, 645 F.3d at 1320. The mere existence of a potential claim or the distant possibility of litigation is not sufficient to trigger a duty to preserve. *Id.* Once a party is on notice of a potential claim, it is under a duty to preserve evidence which it knows, or reasonably should know, is relevant to the claim or potential litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citing *Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556–57 (N.D. Cal. 1987) (stating "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action")). Litigation need not be "imminent or probable" to be reasonably foreseeable and "the proper standard for determining when the duty to preserve documents attaches is the flexible one of reasonably foreseeable litigation." *Micron Technology*, 645 F.3d at 1320. The duty to preserve also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster*, 462 F. Supp. 2d at 1068 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. 7-37 *Moore's Federal Practice – Civil* § 37.120. The courts apply an objective standard to determine whether a party's duty to preserve is "reasonably foreseeable." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 881 F. Supp. 2d 1132, 1145 (N.D. Cal. 2012) (citing *Micron Technology*, 645 F.3d at 1320). The Ninth Circuit reviews the district court's factual finding of when litigation was reasonably foreseeable for clear error. *Micron Technology*, 645 F.3d at 1321.

### C. Scope of the Duty to Preserve

The duty to preserve evidence arises when the party has notice that the evidence is relevant to litigation, for example, "when a party should have known that the evidence may be relevant to

future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also MOSAID Techs, Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (stating that a litigant "is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation"). "The duty to preserve evidence also includes an obligation to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Apple*, 881 F. Supp. 2d at 1136 (internal quotation and citation omitted). A party's duty to preserve relevant documents includes documents or tangible things made by individuals that are likely to have discoverable information that the disclosing party may use to support its claims or defenses. *Id.* It also includes documents prepared for those individuals, information that is relevant to the claims or defenses of any party, or the subject matter of the action. *Id.* The duty to preserve also includes information in the possession of "those employees likely to have relevant information—the 'key players' in the case." *Id.* (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).

Once a duty to preserve is triggered a party has a duty to suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to litigation. *In re Napster*, 262 F. Supp. 2d at 1070 (citing *Zubulake*, 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.")). The duty to preserve discoverable materials is an affirmative one. *Turnage*, 115 F.R.D. at 557–58. This affirmative duty requires agents or corporate officers having notice of discovery obligations to communicate those obligations to employees in possession of discoverable materials. *Id.* "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. In *Apple*, the court found Samsung violated its duty to preserve when it did not suspend its automatic bi-weekly destruction policy for a software system, failed to distribute litigation hold notices to a sufficient number of employees after litigation was reasonably foreseeable, failed to follow up with its affected employees for seven months, and failed to monitor its employees' preservation efforts to ensure its employees were all compliant. 881 F. Supp. 2d at 1150.

### D. Authority to Sanction

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Napster*, 462 F. Supp. 2d at 1066 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). In *Chambers*, the Supreme Court traced the historical origin of the inherent power of a federal court to sanction a litigant for bad-faith conduct. 501 U.S. at 43–50. A trial court has the inherent authority to sanction a party for discovery and litigation abuse. *Id*. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." *Id.* at 43. The court's inherent power is not governed by rule or statute "but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* The existence of a rule or statute does not repeal or modify the court's inherent power to deal with abuses. *Id.* at 49. The court's inherent power to sanction "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* However, the court's inherent powers to sanction "must be exercised with restraint and discretion." *Id.* at 44. Although the court has the power to dismiss a lawsuit under its inherent authority, less severe sanctions should be considered. *Id.*

Spoliation sanctions under Rule 37 are also available against a party who fails to obey an order to provide or permit discovery. *Leon v. IDX Systems, Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). The Ninth Circuit applies the same burden of proof under Rule 37(b)(2) and Rule 37(d). The burden is on the party who fails to comply with its discovery obligations to show substantial justification, or that an award of expenses and/or other sanctions would be unjust. *Hyde & Drath v. Baker*, 24 F 3d 1162, 1171 (9th Cir. 1994). A finding of bad faith is not required for sanctions under Rule 37, although the good or bad faith of the party may be considered in determining appropriate sanctions. *Id.*

### E. Standard of Review

The Ninth Circuit reviews the district court's imposition of spoliation sanctions for an abuse of discretion. *Leon*, 464 F.3d at 958. The district court's factual findings, including findings

of bad faith and prejudice, are reviewed for clear error. *Id.* The district court's credibility determinations are entitled to special deference. *Id.*

### F. Available Spoliation Sanctions

A variety of sanctions may be imposed on a party responsible for spoliation of evidence. The court's broad discretion to impose spoliation sanctions should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *Apple*, 881 F. Supp. 2d at 1136. An award of spoliation sanctions under the court's inherent powers must be exercised with restraint and should be appropriate to the conduct that triggered the sanction. *Id.* The sanction the court imposes "must be the least drastic available to adequately mitigate the prejudice" the opposing party suffered. *Id.* at 1150.

#### 1. Adverse Inference Instructions

A court can instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The court may instruct the jury that that it may infer the spoliated evidence would have been unfavorable to the responsible party. *Id.* A finding of "bad faith" is not a prerequisite to an adverse inference instruction. *Id.* (citing *Unigard Secur. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368–70 n.2 (9th Cir. 1992)). An adverse inference instruction may be given upon a finding that the evidence was destroyed after a party was on notice of the potential relevance of the evidence to the litigation. *Id.*

In *Akiona v. United States*, 935 F.2d 158 (9th Cir. 1991), the Ninth Circuit explained the twin rationales for permitting the trier of fact to draw an adverse inference from the destruction of evidence relevant to a case. *Id.* at 161. The evidentiary rationale for an adverse inference is based on "the common sense observation" that a party who has notice that evidence is relevant to litigation and destroys the evidence is more likely to have been threatened by the evidence than is a party in the same position who does not destroy evidence. *Id.* There is also a deterrence rationale for permitting the trier of fact to draw an adverse inference from the destruction of evidence

because an adverse inference instruction punishes a party for wrongdoing and is intended to deter others from destroying relevant evidence. *Id.*

Adverse inference instructions range in their level of severity. *Apple*, 881 F. Supp. 2d at 1150. The harshest type of adverse inference instruction directs the jury to deem certain facts admitted and accepted as true. *Id.* When a spoliating party has acted willfully or recklessly a lesser adverse inference instruction imposes a mandatory presumption. *Id.* The least harsh instruction allows the jury to presume that lost evidence is both relevant and favorable to the innocent party. *Id.* If the jury makes the presumption, "the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party." *Id.* The Ninth Circuit has held that a trial court's "adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with the party's right to produce other relevant evidence." *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 386 (9th Cir. 2010).

### 2. Evidentiary Sanctions

A court may impose evidentiary sanctions on a party responsible for destroying or failing to preserve evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence. Such power includes the power where appropriate to order the exclusion of certain evidence."). Evidentiary sanctions may include introduction of evidence of spoliation, preclusion sanctions, excluding evidence and witness testimony, and taking matters deemed as admitted. *See, e.g.*, *Unigard*, 982 F.2d at 368–69 (excluding evidence as a sanction under the court's broad discretion to make evidentiary rulings conducive to the conduct of a fair and orderly trial). In *Unigard*, the Ninth Circuit upheld the trial court's order excluding plaintiff's expert from testifying based on evidence plaintiff destroyed two years before filing suit. *Id.*

### 3. Monetary Sanctions

The court may also award monetary sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464

F.3d at 961. Before awarding such sanctions, however, a court must make an express finding that the sanctioned party's behavior amounted to "bad faith." *Id.* A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Where the court finds a party has acted in bad faith, any award of attorney's fees must be reasonable. *Id.*

### 4. Dispositive Sanctions

Finally, a court may impose litigation-ending sanctions such as dismissal. Dismissal, however, is only appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 6 F.3d 337, 348 (9th Cir. 1995)). Dispositive sanctions "should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party." *Micron Technologies*, 645 F. 3d at 1328–29. Additionally, "the presence of bad faith and prejudice, without more, do not justify the imposition of dispositive sanctions." *Id.* at 1329. The district court must take into account: (1) the degree of fault of the party who spoliated; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* at 1329 (citing *Shmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994) (internal quotations omitted)). "The district court must 'select the least onerous sanctions corresponding to the willfulness of the destructive act and the prejudice suffered by the victim'." *Id.* (citing *Shmid*, 13 F.3d at 79).

Before imposing the "harsh sanction" of dismissal, a court must consider five factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manage its docket; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *Id.* The factors the Ninth Circuit applies in reviewing whether the district court properly considered lesser sanctions prior to dismissal are: (1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why alternate sanctions would not be appropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the

13

district court warned the party of the possibility of dismissal before ordering dismissal. *Leon*, 464 F.3d at 960. However, the second factor is inapplicable when the spoliation occurs before a district court has the opportunity to compel discovery or order lesser sanctions. *Id.* Similarly, the third factor is inapplicable when the destruction of evidence occurred before the court had any opportunity to warn the spoliating party. *Id.* When the only factor weighing against dismissal is the public policy favoring disposition of cases on their merits, this factor is not enough, standing alone, to outweigh the other four factors. *Id.* at 961.

In addition, due process requires a relationship between the sanctioned party's misconduct and the matters in controversy such that spoliation threatens to interfere with the rightful decision of the case. *Anheuser-Busch*, 69 F.3d at 348. Dismissal may be warranted where: (1) a party has engaged deliberately in deceptive practices that undermine the integrity of the judicial proceedings; (2) a party's denials of material fact were knowingly false; and (3) a party willfully failed to comply with discovery orders; (4) a party falsified a deposition; (5) in response to abusive litigation practices; (6) for concealing documents and violating the court's discovery orders; and (7) to ensure the orderly administration of justice and the court's orders. *Id.*

### G. Bad Faith

A determination of bad faith is generally required before dispositive sanctions may be imposed under the court's inherent powers. *Micron Technology*, 645 F.3d at 1326. "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id.* A district court's determination of bad faith must do more than state a conclusion. *Id.* at 1327. The district court must first find that spoliation was intentional. *Id.* The proper inquiry is whether the party intended to impair the ability of the adverse party to preserve its claims or defenses. *Id.* (citing *Shmid*, 13 F.3d at 80). If the district court finds that a party's "goal was to obtain an advantage in litigation through that control of information and evidence, it would be justified in making a finding of bad faith." *Id.*

The court is not required to find bad faith to award an adverse inference sanction. *Apple*, 881 F. Supp. 2d at 1147 ("all that the court must find is that [the spoliator] acted with a 'conscious

disregard' of its obligation"). "The court need not find bad faith by the offending party before issuing sanctions for destruction of evidence; willfulness or fault can suffice." *Nursing Home Pension Fund v. Oracle*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (citing *Leon*, 464 F.3d at 958). "Sanctions may be appropriate when the party knew or should have known that destroyed evidence was potentially relevant to litigation." *Id.* (citing *Glover*, 69 F.3d at 1329). "District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *In re Napster*, 462 F. Supp. 2d at 1067.

### H. Prejudice

The party asserting it has been prejudiced by spoliation must show the spoliation materially affects its substantial rights and is prejudicial to the presentation of its case. *Micron Technology*, 645 F.3d at 1328 (citing *Wilson v. Volkswagon of Am., Inc.*, 561 F.2d 464, 504 (4th Cir. 1977)). To satisfy its burden, the party asserting prejudice must only "come forward with plausible, concrete suggestions" about what the spoliated evidence "might have been." *Id.* (citing *Shmid*, 13 F.3d at 80). However, if the court finds the spoliator acted in bad faith, the spoliator bears the "heavy burden" to show a lack of prejudice to the opposing party. *Id.* A party guilty of intentional spoliation "should not easily be able to excuse the misconduct by claiming" that the spoliated evidence was of "minimal import." *Id.* A party seeking spoliation sanctions need not show the loss of evidence would have changed the outcome of the trial, only that the spoliated evidence "clearly impaired" its "ability to go to trial" or threatens to interfere with the rightful decision of the case. *Anheuser-Busch*, 69 F.3d at 354.

## II. Analysis and Decision

For the reasons explained below, the court will deny Plaintiff's request for spoliation sanctions in the form of striking Albertson's answer and precluding it from asserting a comparative negligence affirmative defense. The court finds that evidentiary sanctions in the form of allowing the plaintiff to introduce evidence of the loss of the customer/vendor incident call center worksheet, surveillance video, and former store director's emails are sufficient to remedy Albertson's loss of or failure to preserve.

Plaintiff argues that Albertson's was on notice of a potential claim on February 1, 2016, the date of plaintiff's slip and fall, because plaintiff reported she was injured and intended to seek medical treatment. The court disagrees.

Plaintiff indicated on the incident report that she injured her "left hip, leg, butt cheek and my right knee and right foot and my left hand." The store director on duty, Mr. Ramirez, filled out a hand-written report which was produced in discovery in this case, and attached as Exhibit B to Albertson's opposition. In it, Mr. Ramirez indicated that he "offered an ambulance three different times to Ms. Brown" but "each time she turned it down asking only for a chair and water." The incident report plaintiff filled out does not state that she intended to seek medical attention, and the motion cites no portion of the record indicating she has testified to that effect. Thus, although plaintiff stated she was injured, the motion does not support plaintiff's claim that she indicated she intended to seek medical treatment. Rather, Mr. Ramirez's hand-written report reflects that she declined three offers to call an ambulance. Additionally, she spoke to a Sedgwick adjuster on February 9, 2016. The Sedgwick claim notes for this incident are attached as Exhibit C to Albertson's opposition. The notes reflect that she reported she was with her husband shopping when she fell. Her husband continued to shop as she filled out paperwork and the two left the store approximately 30 minutes later.

The February 9, 2016 Sedgwick claim notes document a call between the assigned adjuster and Ms. Brown. Ms. Brown told the adjuster that was with her husband on the evening of the incident she slipped and fell in milk. She described how she fell, that she landed on her left side, butt and hip, that she stayed on the floor for a minute, and that a chair was brought for her but that she couldn't sit because her left side was sore so she stood and talked to the store director. She told the adjuster where she observed the spilled milk. She remained in the aisle to fill out the customer incident report. Ms. Brown stated that while she was filling out the paperwork, her husband continued shopping to pick up the items they needed, and that the couple left the store approximately 30 minutes after the slip and fall.

The court finds that Albertson's was on notice of a potential claim on February 9, 2016, when she reported to a Sedgwick adjuster that she went to the ER the following morning, x-rays

were taken, she was diagnosed with contusions and given a leg brace for her knee which "pops out without the brace." She reported she had a follow up appointment scheduled that Thursday with her primary care provider. The adjuster's note states "she is Medicaid", documenting her medical insurance status. A claim was certainly reasonably foreseeable once Albertson's agent, Sedgwick, was aware that plaintiff reported injuries at the store, went to the ER for treatment for the same body parts the next morning, and had a follow up appointment with her primary care provider.

Litigation was reasonably foreseeable on February 22, 2016, when Albertson's received counsel for plaintiff's representation and preservation letter. The letter explicitly states that if the parties were unable to resolve the matter the plaintiff would seek "compensation through litigation."

Plaintiff argues that spoliation sanctions are warranted because Albertson's lost or destroyed the customer/vendor incident worksheet for this incident, surveillance video, and email communications between Albertson's former store director and Sedgwick. The court finds that at most, Albertson's failure to preserve the entire customer/vendor incident worksheet was negligent. A portion of the first page of the form was produced and attached as Exhibit A to Albertson's opposition. The testimony of Albertson's Rule 30(b)(6) designee was that a document was placed over the remainder of the document during the copying process, and that the original has been lost.

It is undisputed that at 7:30 a.m. the day after the accident, Albertson's advised Sedgwick about the claim and that Sedgwick instructed Albertson's personnel to gather certain information including CCTV/video one hour before and one hour after the incident, whether the fall was captured or not, the sweep log and sweep declaration if one was kept, the slip/trip/fall incident and claim signed by the employee as well as photos showing the location of the area of the slip and fall as well as its condition at the time of the incident, and if applicable, damage to the customer's property. Store personnel attempted to retrieve the video surveillance for the incident. Albertson's Rule 30(b)(6) witness and the Sedgwick claim notes corroborate that Albertson's was unable to retrieve the surveillance video because of a system-wide failure that affected not only the store in question, but other stores as well. Mr. Baca, Albertson's Rule 30(b)(6) witness, testified that there was a "systems outage" that caused the surveillance system not to record anything that day. The

outage was for more than two weeks. Albertson's called a technician to attempt to correct the failure. Mr. Baca testified that because this was a widespread issue that affected more than one store, this store had to wait for the service technician. When the service technician was unable to correct the failure, Albertson's called in another specialist to attempt to retrieve the video. The specialist was successful in recovering video from March 6, 2016 forward, but no video earlier. Plaintiff does not dispute this evidence. The court finds Albertson's explanation reasonable. Technology is grand, but sometimes fails. When Albertson's discovered a problem with its video surveillance system, it took prompt efforts to attempt to fix the system, and failing that, to restore video surveillance that had not been recorded.

Albertson's preserved and produced the incident report that plaintiff filled out that was signed by the store manager on duty, Mr. Ramirez; photographs of the slip and fall which depict the spill, plaintiff on the floor, and skid marks through the liquid on which she fell; Mr. Ramirez's hand-written report; and the pre-litigation Sedgwick claims notes documenting communications about the slip and fall between Sedgwick and store personnel, the plaintiff, and her counsel. This is not a case in which the loss of the surveillance video or customer/vendor incident call center worksheet, or the former store director's emails threatens the rightful decision of the case on the merits. Plaintiff is not forced to rely on spotty and incomplete evidence. Mr. Ramirez and Albertson's Rule 30(b)(6) designee, Isaac Baca, testified about the incident, Albertson's safety policies and procedures, the extent of the spill, how employees were supposed to respond to a spill, what they actually did in this case, and that leaving portions of the spill unattended violated the company's safety policies and created an unsafe environment. Portions of the deposition testimony of Mr. Ramirez and Mr. Baca quoted in the motion and opposition indicate that their testimony was direct, responsive, unequivocal, and they did not attempt to avoid responsibility for what occurred. Although only four photographs were apparently taken, both Mr. Ramirez and Mr. Baca testified about the extent of the spill, what the substance was on the floor, and where the milk could be observed in the photographs. They also testified that employees should have immediately identified the extent of the spill and placed cones at each end to protect customers for safety reasons.

There is simply no evidence in the record to suggest that Albertson's acted intentionally, or recklessly, or for the purpose of obtaining litigation advantage by copying over the customer/vendor incident report, or being unable to restore the lost video surveillance. With respect to the failure to preserve the former store director's emails, the court is persuaded that the substance of any such communications were logged, recorded and summarized in Sedgwick's claims notes which were produced early in discovery in Albertson's initial disclosures. Under these circumstances, the court finds that the only appropriate sanction for Albertson's failure to preserve the customer/vendor incident report, and the store director's emails, is an evidentiary sanction in the form of allowing the plaintiff to adduce evidence that the report was lost or destroyed, that Albertson's failed to preserve the former store director's email communications with Sedgwick, and that Albertson's video system failed to record the incident. Albertson's should be permitted to introduce evidence of its own explanations for why these items were lost or destroyed, and the jury should be permitted to draw its own conclusions from the loss or destruction of the three items in dispute.

For the reasons explained,

**IT IS ORDERED** that plaintiff's Motion for Spoliation Sanctions (ECF No. 14) is **GRANTED in part** and **DENIED in part**.

1. The motion is **DENIED** with respect to the request for an order striking Albertson's answer and precluding Albertson's from asserting a comparative negligence affirmative defense.

2. The motion is **GRANTED** to the limited extent that plaintiff be permitted to introduce evidence that the report was lost or destroyed, that Albertson's failed to preserve the former store director's email communications with Sedgwick, and that Albertson's video system failed to record the incident. Additionally, Albertson's shall be permitted to introduce evidence of its explanation for the loss or destruction of these items.

DATED this 10th day of May, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE